Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000821
22-MAY-2018
08:48 AM

NO. CAAP-16-0000821

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JENNIFER WAKEFIELD, Plaintiff-Appellee, v.
BRIAN BARDELLINI and LAUREN AMPOLOS, Defendants-Appellants

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 16-1-1540)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendants-Appellants Brian Bardellini (**Bardellini**) and Lauren Ampolos (**Ampolos**) (collectively, **Appellants**) appeal from the October 20, 2016 Judgment for Possession, the October 20, 2016 Writ of Possession, and challenge the October 11, 2016 Order Granting Plaintiff Jennifer Wakefield's Motion for Summary Judgment (**Order Granting Summary Judgment**), entered in the District Court of the Second Circuit, Wailuku Division (**District Court**).[1]

On appeal, Appellants raise three points of error, all contending that the District Court erred in granting summary

_____

[1] The Honorable Adrianne N. Heely presided.

judgment in favor of Plaintiff-Appellee Jennifer Wakefield (Wakefield) on her summary possession claim.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellants' points of error as follows:

The threshold issue in this case is whether Appellants raised a genuine issue of material fact as to whether Wakefield was prohibited from evicting them pursuant to Hawaii Revised Statutes (**HRS**) § 521-74(a)(1) (2006). HRS § 521-74(a) provides, in relevant part:

> **§ 521-74 Retaliatory evictions and rent increases prohibited.** (a) Notwithstanding that the tenant has no written rental agreement or that it has expired, so long as the tenant continues to tender the usual rent to the landlord or proceeds to tender receipts for rent lawfully withheld, no action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit involuntarily . . ., after:
>
> > (1)  The tenant has complained in good faith to the . . . landlord . . . of conditions in or affecting the tenant's dwelling unit which constitutes a violation of a health law or regulation or of any provision of this chapter;

Here, in opposition to Wakefield's motion for summary judgment, Bardellini submitted a September 8, 2016 declaration that included:

> 3.  I have complained in good faith to the landlord, Plaintiff herein, on a number of occasions of conditions in or affecting Defendants dwelling unit. The conditions include: 1) dangerous contamination of household drinking water and associated plumbing, 2) non disclosure of the fact that there was a pre-existing problem with contamination of household drinking water that put the health and welfare of Defendants at risk, 3) the presence of little fire ants on subject property, 4) the coercion, under threat of eviction by Plaintiff, into receiving experimental chemicals instead of known proven effective alternatives, 5) misrepresentation by Plaintiff that the second "residence" on subject property was permitted, when in fact, it was not permitted, and contained dangerous electrical additions, and 6) misrepresentation by Plaintiff without any consultation with

2

me that Plaintiff was renting out a portion of the same land allocated and designated for myself and my wife's use, to other tenants, while collecting rent and not sharing that rent with myself and my wife whom had previously received that same portion of land from Plaintiff for our farm use.

4. Prior to any rent agreement consummated in January 2015 between Plaintiff/Landlord and Defendants/Tenants including myself and my wife to permit us to farm the subject property owned by Plaintiff, without any disclosure to us by Plaintiff, Plaintiff had entered into an agreement with MISC [Maui Invasive Species Council] or HAL [Hawaii Ant Lab] to allow the spraying or pesticide application on the subject property prior to the first date of entry of the rental agreement. Myself and my wife did not want further spraying of our plants for our own protection. Some of the reasons were that:

a) 75% of the chemicals in the application schedule specifically state regulations against use of same on crops,
b) There are numerous natural, biological, and/or organic controls recognized by the USDA as well as over 60 years of research and evidence efficacy,
c) They have refused to provide safety tests when asked to do so,
d) Myself and my wife have complied with the present schedule for 15 months and now there are pests where there previously were no pests thus confirming a failure to control and eradicate pests on the subject property,
e) The experiment that constitutes the "efficacy" for this chemical schedule is now a re-infested site thus confirming further that the schedule needs to be re-assessed,
f) When the HDOA asked to monitor the chemical usage for safety, the eradicators immediately and permanently discontinued previously labeled "mandatory" chemicals from their schedule as opposed to being overseen or monitored for safety measures, and
g) The applicators have been witnesses [sic] multiple times and admitted to knowingly breaching federal safety regulations.

5. Plaintiff's conduct in sending a notice to vacate was an act of retaliation against myself and my wife for refusing to allow continued spraying of experimental and/or toxic chemicals on our plants. More importantly, at the time of negotiations of the rental agreement, my wife and I clearly notified Plaintiff that we were organic farmers. Notwithstanding, Plaintiff failed to disclose the contract to use experimental chemicals and schedules, knowing full well that myself and my wife were organic farmers.

6. Had I known or had it been disclosed to me by Plaintiff, before we secured a rent agreement from Plaintiff in January 2015, that there was an agreement secured by Plaintiff that would require spraying of experimental

3

chemicals that are unsafe or untested, or there was the presence of a toxic contaminant in the drinking water and plumbing system, myself and my wife would never have entered into a rent agreement with Plaintiff.

7. Myself and my wife are being unfairly treated by a landlord whom [sic] was not honest with us at the outset. When Plaintiff sent a notice to vacate the subject property within one day after we notified her of our concerns about our health and safety in not wanting any further spraying of experimental chemical schedules, Plaintiff without justification retaliated against myself and my wife.

8. We have been good tenants and paid on time each month when the rent is due. Our action to protect ourselves in defense of our health and safety, in choosing a vendor of our own choosing to protect ourselves is the right thing to do. Plaintiff should not be allowed to retaliate against us when we earnestly want to work with the farming community to uplift our friends, family and community. Plaintiff's retaliatory actions should not be rewarded by this Court.

Appellants' opposition to Wakefield's summary judgment motion was also accompanied by various exhibits related to the complaints identified in Bardellini's declaration.

Appellants' defense of retaliatory eviction is based primarily on the contention that Wakefield's actions were in retaliation for Appellants' refusal to allow the spraying of pesticides on their organic farming products at the leased property because of health and safety concerns. Although Bardellini's declaration identifies other concerns that Bardellini or Ampolos reportedly raised to Wakefield at some point during the course of Appellants' tenancy, paragraph 5 of Bardellini's declaration makes clear that he perceived that Wakefield retaliated against Appellants in response to Appellants' refusal to allow the continuation of the pest control measures instituted by Wakefield. Thus, we consider whether

4

Bardellini's declaration raised a genuine issue of material fact as to this assertion of prohibited retaliation.

The supreme court recently reiterated how courts must accord proper weight to a declaration submitted in opposition to summary judgment:

> Pursuant to HRCP Rule 56(e) (2000), affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits that state ultimate or conclusory facts cannot be used in support of or in opposition to a motion for summary judgment. . . .
>
> . . . .
>
> HRCP Rule 56(e) provides that affidavits shall set forth facts based on personal knowledge. Thus, an affidavit by its nature includes an affiant's own perception of the matter. . . .
>
> HRCP Rule 56(e) does not preclude an affidavit from being self-serving. Indeed, . . . "most affidavits submitted [in response to a summary judgment motion] are self-serving." . . . Thus, a party's self-serving statements that otherwise comply with HRCP Rule 56(e) can be utilized to defeat summary judgment. . . .
>
> Additionally, HRCP Rule 56(e) does not require a statement in an affidavit to be corroborated in order to be a qualifying affidavit under the rule. . . . Nor has this court ever held that an uncorroborated statement by a party to the litigation is insufficient to raise a dispute as to a material fact. . . .
>
> "Conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." . . . An "inference" in turn is "a conclusion reached by considering other facts and deducing a logical consequence from them." . . . Thus, when an assertion in an affidavit expresses an inference without setting forth the underlying facts on which the conclusion is based or states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory and cannot be utilized in support of or against a motion for summary judgment. . . . On the other hand, an inference within an affidavit that is based on stated facts from which the conclusion may reasonably be drawn is not conclusory and may be used to support or oppose a motion for summary judgment.
>
> To be sure, the underlying facts and the inference must be based on personal knowledge and otherwise admissible in evidence. Inferences that amount to opinions thus must satisfy relevant evidentiary rules that would apply were the

evidence offered through witness testimony. Lay opinions must be both "rationally based on the perception of the" affiant and "helpful to a clear understanding of the [affiant's] testimony or the determination of a fact in issue." An affiant generally may "give an opinion on an ultimate fact involved in the case" when such an opinion is properly supported by facts personally perceived. But the affiant "may not give opinions on questions of law as that would amount to legal conclusions." . . . Indeed, any legal conclusions drawn by the affiant are not admissible evidence, regardless of whether they are couched as the affiant's opinion.

The statements in Nozawa's declarations that she always received excellent employment evaluations and that she was not informed by Soquena of any work performance issues were specific, factual information personally known to Nozawa. As additional support of her assessment regarding her work performance, Nozawa highlighted that the termination letter she received stated her discharge was the result of reorganization—not disciplinary action. In light of these statements, Nozawa had a factual basis to reasonably infer that she did not have work performance problems and was fully capable of performing her duties at the time of termination. To the extent these conclusions amounted to opinions, they were rationally based on Nozawa's personal perceptions and may have been helpful to a clear understanding of her declaration and a fact at issue, i.e., whether Local 3's claim that Nozawa was terminated for deficient performance was a pretext for discrimination. Further, the statements did not amount to legal conclusions because they were essentially factual in nature and did not attempt to apply a legal standard. Nozawa did not simply state, for example, that her termination violated HRS § 378-2 or that it was motivated by discriminatory intent, which would not have been admissible evidence that could be considered for purposes of summary judgment.

Because Nozawa did not express a conclusion without stating the underlying facts or reach a conclusion that was not reasonably drawn from the underlying facts, . . . these statements were not conclusory and were in compliance with HRCP Rule 56(e). And to the extent that some of Nozawa's statements were opinions, they were not clearly inadmissible under governing evidentiary rules.

Accordingly, the circuit court erred in finding that Nozawa's declarations were not competent evidence under HRCP Rule 56 because they were self-serving, conclusory, and uncorroborated.

Nozawa v. Operating Engineers Local Union No. 3, SCWC-14-0000021, 2018 WL 1918238 at *6-8 (Haw. April 24, 2018) (citations and footnotes omitted) (designated for publication).

We evaluate Bardellini's declaration in this light. With regard to the pest treatment, Bardellini stated that he complained in good faith to Wakefield about "the coercion, under threat of eviction by [Wakefield], into receiving experimental chemicals instead of known proven effective alternatives." This statement is based on Bardellini's personal knowledge of his complaint to Wakefield and his perception of her response. However, Appellants do not cite any authority or otherwise explain how the experimental nature of a pest control treatment regime constitutes a violation of a health law or regulation or of any provision of HRS chapter 521.

Bardellini further stated that "[m]yself and my wife did not want further spraying of our plants for our own protection" based on, *inter alia*, "75% of the chemicals in the application schedule specifically state regulations against use of same on crops" and that "[t]he applicators have been witnesses [sic] multiple times and admitted to knowingly breaching federal safety regulations." The latter of these two bases does not purport to be based on Bardellini's personal knowledge or observation and reports hearsay admissions of safety regulations made by unidentified applicators who have not provided sworn statements to that effect and, thus, does not constitute admissible evidence that could be considered for the purposes of summary judgment.

However, the former of these two bases for refusing further spraying "for [their] own protection" – that 75% of

7

chemicals in the application schedule specifically state regulations against use of same on crops – is based on stated facts from which Bardellini's conclusion (that cessation of spraying is for his family's protection) may reasonably be drawn and may be used to oppose a motion for summary judgment. To be sure, at a trial or evidentiary hearing, Bardellini would bear the burden of proving that Wakefield's pesticide application program "constitutes a violation of a health law or regulation or of any provision of [HRS chapter 521]" and the underlying facts upon which Bardellini's perception is based would be subject to challenge on cross-examination or through submission of evidence to the contrary. On a summary judgment motion, however, evidence is necessarily viewed in the light most favorable to the non-moving party. Id. at *10. Viewing Bardellini's declaration in the light most favorable to Appellants, there is a genuine issue as to whether Wakefield's reasons for terminating Appellants' tenancy was retaliatory, pursuant to HRS § 521-74(a)(1).

Nevertheless, as the District Court and the parties recognized, HRS § 521-74(b) further states, in relevant part:

> (b) Notwithstanding [the retaliatory eviction provisions of] subsection (a), the landlord may recover possession of the dwelling unit if:
>
> . . . .
>
> (2) The landlord seeks in good faith to recover possession of the dwelling unit for immediate use as the landlord's own abode or that of the landlord's immediate family;
>
> . . . .
>
> (7) The landlord is seeking to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant

8

previous to the complaint or request of
subsection (a).

Here, the District Court concluded that there was no genuine issue of material fact that Wakefield established entitlement to nevertheless recover possession of the property based on HRS § 521-74(b)(2) & (7). In support of her summary judgment motion, Wakefield submitted a declaration that stated, *inter alia*:

> 3. I own 82 Loomis Road, Haiku, Hawaii 96708 (the "Property"). On December 27, 2014, I signed a lease for the Property as Landlord with Defendants Brian Bardellini and Lauren Ampolos as "Tenants". . . .
>
> 4. In November 2014, I purchased property located at 220 Oha'oha Place, Makawao, HI with my then boyfriend, David Dwelle. . . .
>
> 5. From the purchase of the Makawao Property onward, I have remained on the Makawao Property. I am a single mom, and live on the Makawao Property with my two minor children.
>
> 6. Mr. Dwelle and I ended our romantic relationship in January 2016.
>
> 7. On April 20, 2016, I received an email from Mr. Dwelle asking that I vacate the Makawao Property. [Copy attached.]
>
> 8. On April 26, 2016, I sent an email to Defendants Brian Bardellini and Lauren Ampolos that my relationship with Mr. Dwelle had ended earlier in the year and that I needed to move back into the 82 Loomis Road property with my children. [Copy attached.]

As we did with Bardellini's declaration, we view Wakefield's declaration in light of the supreme court's guidance in Nozawa, set forth above. Wakefield's declaration is based on her personal knowledge of the termination of her romantic relationship, her former boyfriend's request that she move out of their shared home, and her perception of her need to move back into the subject property. Wakefield's declaration did not

express a conclusion that she needed to move back into the property without stating the underlying facts or reach a conclusion that was not reasonably drawn from the underlying facts. With her declaration, Wakefield submitted various documents, including a Joint Tenancy Agreement dated November 15, 2014, in which Wakefield agreed, in essence, that she would move out if she and Dwelle broke up. Thus, Wakefield's declaration was competent evidence supporting her recovery of the property pursuant to HRS § 521-74(b)(2).

The issue of Wakefield's good faith basis for recovery of the property for immediate use as her own residence and that of her children is not addressed in Bardellini's declaration. Instead, Appellants point only to various exhibits, including emails, that were submitted as attachments to their counsel's declaration. However, counsel was not a party to those email conversations, did not assert any basis for claiming personal knowledge of their authenticity or their content, and Wakefield objected to their consideration both in the District Court and on appeal. We conclude that the purported emails are unsworn and uncertified, thus plainly inadmissible, and cannot be considered upon a summary judgment motion. See Pioneer Mill Co. v. Dow, 90 Hawai'i 289, 297, 978 P.2d 727, 735 (1999) ("Documents that are plainly inadmissible in evidence and are unsworn, not properly sworn to, and/or uncertified cannot be considered upon a summary judgment motion. Furthermore, unless counsel wishes to relinquish his or her role as advocate and become a witness in

10

the case, an affidavit of counsel swearing to the truth and accuracy of exhibits does not authenticate exhibits not sworn to or uncertified by the preparer or custodian of those exhibits.") (citations omitted). Accordingly, even viewing the evidence in the light most favorable to the non-moving party, we conclude that the District Court did not err in ruling that, notwithstanding HRS § 521-74(a), there was no genuine issue of material fact as to Wakefield's entitlement to recover possession of the subject property pursuant to HRS § 521-74(b)(2).[2]

For these reasons, the District Court's October 20, 2016 Judgment for Possession and Writ of Possession are affirmed.

DATED: Honolulu, Hawai'i, May 22, 2018.

On the briefs:

Keoni K. Agard,
for Defendants-Appellants.

Jack R. Naiditch,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[2]     Thus, we need not reach the court's ruling as to HRS § 521-74(b)(7).

11